**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MAGGIE L. WHITE-SWANSON,**

               **Plaintiff,**

  vs.                                               **6:14-cv-01070**
                                                       **(MAD)**

**CAROLYN W. COLVIN,** *as Commissioner*
*of the Social Security Administration* ,

               **Defendant.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

**OFFICE OF PETER W. ANTONOWICZ**    **PETER W. ANTONOWICZ, ESQ.**
148 West Dominick Street
Rome, New York 13440
Attorney for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **PETER W. JEWETT, AUSA**
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Maggie L. White-Swanson ("Plaintiff") commenced this action on August 29, 2014, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI"). *See* Dkt. No. 1.

## II. BACKGROUND

Plaintiff's date of birth is August 28, 1988, making Plaintiff eighteen years old on April 1, 2007, the alleged onset of her disability. *See* Dkt. No. 10, Administrative Transcript ("T."), at 154-55, 162. Plaintiff graduated from high school and did not have a history of receiving any special education services. *See id.* at 44, 167. She also completed vocational training in cosmetology in June 2007. *See id.* at 167. Plaintiff did not ever work in that vocation. Her relevant work history includes working as a cashier in the fast food industry for a few months in 2004 and conducting surveys over the phone for several months in 2006. *See id.* at 167, 183. She was let go from her most recent job shortly before she was diagnosed with epilepsy. *See id.* at 167. On the field office disability report completed by Plaintiff over the internet, Plaintiff states that her disabling conditions include a seizure disorder, epilepsy, gastroesophageal reflux disease ("GERD"), and anemia. *See id.* at 163, 166. At the disability hearing, Plaintiff identified that the frequency of her seizures precludes her from working. *See id.* at 44.

Plaintiff suffers from both epileptic seizures and stress/sleep-related seizures. *See id.* at 51. The epilepsy causes petit mal seizures while the stress/sleep-related seizure condition causes grand mal seizures, according to Plaintiff. *See id.* at 51. In the two months preceding the hearing, Plaintiff estimates that she had between eight and ten seizures, but admits that this was a particularly active period. *See id.* at 52. She has had periods up to six or seven weeks without experiencing a seizure. *See id.* at 51. When Plaintiff has a seizure, she does not remember what occurred, but she testified that she acts erratically, suffers from memory loss, experiences amnesia-like symptoms, and feels disoriented and tired with a headache after the seizure. *See id.* at 45. After a seizure passes, it takes Plaintiff thirty minutes to a couple of hours to recover from the effects. *See id.* at 53.

Plaintiff is married and has two young children. *See id.* at 46. On a daily basis, she stays home with her family, but she reported that she is not able to stay home alone with her children. *See id.* at 179. With the assistance of her husband, Plaintiff is able to cook dinner, and she is also able to do the laundry, play with her children, and put them to bed. *See id.* Plaintiff is not permitted to have a driver's license due to her seizure disorder, and she has never held a driver's license. *See id.* at 171, 179. On a typical day, Plaintiff lays down or rests for about two hours. *See id.* at 54. At the time of the hearing, Plaintiff's husband was not employed, but he was working towards his equivalency diploma. *See id.* at 48, 55. Plaintiff's mother-in-law or a family friend stays with her when her husband has to go out. *See id.* at 54.

On September 5, 2011, Plaintiff protectively filed an application for SSI. *See id.* at 162. The application was initially disapproved in a notice dated January 31, 2012. *See id.* at 68. Plaintiff requested a hearing by an administrative law judge, *see id.* at 85-87. A video-conference hearing was conducted on September 4, 2012 before Administrative Law Judge Rosanne M. Dummer (the "ALJ"). *See id.* at 39-61. The ALJ issued an unfavorable decision to Plaintiff on January 11, 2013. *See id.* at 22-38. The ALJ made the following determinations: (1) Plaintiff has not engaged in substantial gainful activity since September 5, 2011, the application date; (2) Plaintiff's severe impairments include a seizure disorder and asthma; (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "listed impairment(s)"); (4) Plaintiff has the residual functional capacity ("RFC") to lift or carry fifty pounds occasionally and twenty-five pounds frequently, sit, stand, or walk for six of eight hours, balance, stoop, kneel crouch, crawl, and climb ramps and stairs occasionally, but Plaintiff can never climb ladders, ropes, or scaffolds, should avoid concentrated exposure to humidity and pulmonary irritants, should avoid

3

concentrated exposure to work hazards including unprotected heights, and should not do any commercial driving; (5) Plaintiff does not have any past relevant work; and (6) considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See id.* Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from September 5, 2011 through the date the application was filed. *See id.* at 33.

Plaintiff timely filed a request for a review of the ALJ's decision with the Appeals Council, *see id.* at 17-18, and, in a notice dated July 29, 2014, the request was denied rendering the ALJ's decision the Commissioner's final decision, *see id.* at 4-9. Plaintiff then commenced this action for judicial review of the denial of her claim by the filing of a complaint on August 29, 2014. *See* Dkt. No. 1. Both parties have moved for judgment on the pleadings. *See* Dkt. Nos. 11, 12. The Court orders that the Commissioner's decision is reversed and remanded.

### III. DISCUSSION

**A. Standard of Review**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). The Court must examine the administrative transcript to determine whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72

(N.D.N.Y. 2005) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotation marks omitted).

If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and the court is not permitted to substitute its analysis of the evidence. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("[The court] would be derelict in its duties if we simply paid lip service to this rule, while shaping [the court's] holding to conform to our own interpretation of the evidence"). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.  Analysis**

  *1. Disability analysis*

For purposes of SSI, a person is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a sequential, five-step analysis for evaluating these disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical

5

> evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations. If the claimant has such an
> impairment, the [Commissioner] will consider him disabled without
> considering vocational factors such as age, education, and work
> experience. . . . Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional capacity to
> perform his past work. Finally, if the claimant is unable to perform
> his past work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). After the third step, the ALJ assesses relevant medical evidence and other evidence and then determines the plaintiff's RFC, which is used in steps four and five. *See* 20 C.F.R. § 404.1520 (a)(4), (e). The plaintiff bears the burden on steps one through four, and then the Commissioner has the burden on the final step "of proving that the claimant still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa*, 168 F.3d at 77 (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986) (internal quotation marks omitted).

### *2. Listed Impairment*

At step three of the disability analysis, a plaintiff who meets or medically equals one of the listed impairments is "conclusively presumed to be disabled and entitled to benefits." *Dixon v. Shalala*, 54 F.3d 1019, 2022 (2d Cir. 1995). Plaintiff contends that the ALJ failed to properly evaluate her claim under the listed impairments of § 11.02 (convulsive epilepsy) and § 11.03 (nonconvulsive epilepsy). *See* Dkt. No. 11 at 6-10. These listed impairments require Plaintiff to prove the following:

> 11.02 Epilepsy-convulsive epilepsy, (grand mal or psychomotor),
> documented by detailed description of a typical seizure pattern,
> including all associated phenomena; occurring more frequently than
> once a month in spite of at least 3 months of prescribed treatment.
> A. Daytime episodes (loss of consciousness and convulsive seizures) or

6

> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.
>
> 11.03 Epilepsy-nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

In evaluating Plaintiff's claim at step three under these two listed impairments, the ALJ stated

> the evidence is devoid of documented detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month, in spite of at least 3 months of prescribed treatment with (1) daytime episodes (loss of consciousness and convulsive seizures); (2) nocturnal episodes manifesting residuals which interfere significantly with activity during the day or (3) alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

T. at 26. Without any other explanation, the ALJ concludes that Plaintiff's impairments do not meet or equal any listed impairment. *See id.*

In other sections of the decision, the ALJ cites to the medical evidence from Dr. John Craig Henry, M.D., a neurologist at the Strong Epilepsy Center, indicating that, at the end of 2011, Plaintiff missed taking her medication one or two time per week and that Dr. Henry emphasized to Plaintiff the importance of treatment adherence. *See id.* at 29-31. The medical records reflect that, in April 2012, Plaintiff was much more consistent in taking her medications, which resulted in a marked improvement of her seizure activity. *See id.* at 29, 741-42. However, the records establish that, despite medication compliance, she was continuing to have seizure activity. *See id.*

7

Medical records from Dr. Henry comprehensively outline Plaintiff's epileptic and non-epileptic seizure activity since Plaintiff was eighteen years old through the time of the hearing. *See id.* at 316-23, 330, 345-369, 741-42. There are descriptions of the seizure frequency and character within these records as well as testimony and letters submitted from Plaintiff's mother and husband also describing Plaintiff's seizure activity. *See id.* at 213-15, 316-23, 330, 345-69, 741-42. Additionally, Dr. Henry completed a "seizure residual functional capacity questionnaire" in January 2012 that diagnoses Plaintiff with "medically intractable epilepsy" with seizure frequency between "2-3 times per week or (as few as) 1 per 2-3 month[s]." *See id.* at 325. Dr. Henry describes that Plaintiff suffers from localized seizures and has no warning of an impending seizure. *See id.* Each seizure lasts between three to five minutes, and Plaintiff experiences confusion and exhaustion post-seizure. *See id.* at 325-26. Although the Court recognizes that there is evidence that Plaintiff had some periods of non-compliance with her medication, the diagnosis of medically intractable epilepsy by Dr. Henry and the supportive medical evidence that Plaintiff continues to have breakthrough seizures despite medication is contrary to the ALJ's conclusion at step three of the disability analysis.

Considering the medical evidence in the record, the ALJ's bald conclusion that the record is "devoid" of evidence of Plaintiff's typical seizure pattern in spite of at least three months of prescribed treatment is, not only without substantial support but, contrary to the record. Where the ALJ fails to provide "specific rationale" on his or her determination of a listed impairment, the Second Circuit has held that the decision can still be upheld if portions of the ALJ's decision and the evidence in the record indicate substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982); *see also Salmini v. Comm'r of Soc. Sec.*, 371 Fed. Appx. 109, 112-13 (2d Cir. 2010). In this case, the remainder of the ALJ's decision offers some clues to the ALJ's rationale.

*See* T. at 28-32. However, the whole decision, even when reviewed in conjunction with the administrative record, is devoid of the necessary findings to substantially support the ALJ's determination at step three of the disability analysis. *See Norman v. Astrue*, 912 F. Supp. 2d 33, 81 (S.D.N.Y. 2012). Based on the record and the ALJ's decision, the Court is left to guess at the reasoning behind the ALJ's conclusions that Plaintiff does not meet the listed impairments of § 11.02 and § 11.03. Accordingly, the Court is unable to engage in a meaningful judicial review of whether Plaintiff is disabled under a listed impairment. The case must be remanded for a step-three determination that is supported by more than conclusory language.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and, for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability benefits is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**

Dated: March 10, 2016
      Albany, New York

Mae A. D'Agostino
U.S. District Judge